# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHAMPLOST FAMILY MEDICAL :     **JURY TRIAL DEMANDED**
PRACTICE, P.C. :
6000 North Broad Street :
Philadelphia, PA 19141 :
         :
        v. :     No. 02-CV-3607
         :
STATE FARM INSURANCE :
One State Farm Drive :
Bloomington, IL 61710 :

## SECOND AMENDED COMPLAINT

Plaintiff, Champlost Family Medical Practice, P.C., by and through its attorneys, Dolchin, Slotkin & Todd, P.C., hereby files this Amended Complaint and avers as follows:

### Parties

1.    Plaintiff is Champlost Family Medical Practice, P.C. ("Champlost"), a professional corporation licensed to conduct business in the Commonwealth of Pennsylvania with its principal place of business located at 6000 North Broad Street, Philadelphia, PA 19141, which professional corporation is engaged in the business of providing medical care and treatment.

2.    Defendant is State Farm Insurance ("State Farm"), which is a corporation licensed to conduct business in the Commonwealth of Pennsylvania but has its principal place of business located at One State Farm Plaza, Bloomington, IL 61710, and which corporation is engaged in the business of providing automobile insurance policies in the Commonwealth of Pennsylvania.

### Jurisdiction and Venue

3.    The parties in this matter are of diverse citizenship, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

4.      Therefore, this court has jurisdiction pursuant to 28 U.S.C. §1332, and venue is proper pursuant to 28 U.S.C. §1391(a)(2).

### Background

5.      Champlost is a Pennsylvania professional corporation operating at 6000 North Broad Street, Philadelphia, Pennsylvania 19141.

6.      Champlost employs Alexander S. Fine, M.D. to provide medical care/treatment to patients.

7.      In the ordinary course of its business, Champlost issues bills and/or invoices for patient services.

8.      State Farm is licensed to engage in the writing of automobile insurance policies in the Commonwealth of Pennsylvania.

9.      State Farm provides insurance coverage to its customer, inter alia, for first-party medical benefits.

10.     When providing first-party medical benefits for its insured within The Commonwealth of Pennsylvania, State Farm is obligated to comply with the express provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), 75 Pa.C.S.A. §1701, et seq. and the provisions of the insurance code promulgated thereto.

11.     For a period from on or about December 26, 2001 through March 1, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Edward Scott, Jr. ("Scott"), a patient insured by State Farm.

12.     All medical treatment provided to Scott by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "A" and incorporated herein

-2-

is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

13.    For a period from on or about February 25, 2002 through April 11, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Kasha Hill ("Hill"), a patient insured by State Farm.

14.    All medical treatment provided to Hill by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "B" and incorporated herein is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

15.    For a period from on or about January 22, 2002 through February 1, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Laverne Whitmore ("Whitmore"), a patient insured by State Farm.

16.    All medical treatment provided to Whitmore by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "C" and incorporated herein is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

17.    For a period from on or about January 28, 2002 through April 19, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Buoy Trinh ("Trinh"), a patient insured by State Farm.

18.    All medical treatment provided to Trinh by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "D" and incorporated herein

-3-

is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

19.     For a period from on or about December 17, 2001 through February 19, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Mark Glenn ("Glenn"), a patient insured by State Farm.

20.     All medical treatment provided to Glenn by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "E" and incorporated herein is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

21.     For a period from on or about February 21, 2002 through May 1, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Charles Tyler ("Tyler"), a patient insured by State Farm.

22.     All medical treatment provided to Tyler by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "F" and incorporated herein is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

23.     For a period from on or about December 14, 2001 through April 8, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Wanda Kelly ("Kelly"), a patient insured by State Farm.

24.     All medical treatment provided to Kelly by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "G" and incorporated herein

is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

25.    For a period from on or about October 9, 2001 through April 25, 2002 inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Isaac Rucker ("Rucker"), a patient insured by State Farm.

26.    All medical treatment provided to Rucker by Champlost was performed in conformity with the requirements of MVFRL.  Attached hereto, marked Exhibit "H" and incorporated herein is a true and correct copy of said health insurance claim forms which details the outstanding benefits due.

27.    For a period from on or about June 3, 2002 through July 12, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Victor Adams ("Adams"), a patient insured by State Farm, in the amount of $1,616.48.

28.    All medical treatment provided to Adams by Champlost was performed in conformity with the requirements of MVFRL.

29.    For a period from on or about April 24, 2002 through June 17, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Sonya Ashby ("Ashby"), a patient insured by State Farm, in the amount of $2,731.45.

30.    All medical treatment provided to Ashby by Champlost was performed in conformity with the requirements of MVFRL.

31.    For a period from on or about March 27, 2002 through June 10, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Quyen Chim ("Chim"), a patient insured by State Farm, in the amount of $2,664.42.

32.    All medical treatment provided to Chim by Champlost was performed in conformity with the requirements of MVFRL.

33.    For a period from on or about April 11, 2002 through June 25, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Veng Choing ("Choing"), a patient insured by State Farm, in the amount of $2,770.32.

34.    All medical treatment provided to Choing by Champlost was performed in conformity with the requirements of MVFRL.

35.    For a period from on or about March 4, 2002 through July 17, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Jerome Gass ("Gass"), a patient insured by State Farm, in the amount of $4,299.78.

36.    All medical treatment provided to Gass by Champlost was performed in conformity with the requirements of MVFRL.

37.    For a period from on or about April 18, 2002 through August 28, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Shannelle Griffin ("Griffin"), a patient insured by State Farm, in the amount of $5,138.47.

38.    All medical treatment provided to Griffin by Champlost was performed in conformity with the requirements of MVFRL.

39.    For a period from on or about March 12, 2002 through May 20, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Carlos Hankins ("Hankins"), a patient insured by State Farm, in the amount of $5,670.32.

40.    All medical treatment provided to Hankins by Champlost was performed in conformity with the requirements of MVFRL.

-6-

41.     For a period from on or about December 17, 2001 through April 23, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Ronald Hawkins ("Hawkins"), a patient insured by State Farm, in the amount of $3,607.81.

42.     All medical treatment provided to Hawkins by Champlost was performed in conformity with the requirements of MVFRL.

43.     For a period from on or about February 7, 2002 through April 29, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Tanya Hendricks ("Hendricks"), a patient insured by State Farm, in the amount of $1,631.71.

44.     All medical treatment provided to Hendricks by Champlost was performed in conformity with the requirements of MVFRL.

45.     For a period from on or about May 29, 2002 through August 15, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Lisa Jennings ("Jennings"), a patient insured by State Farm, in the amount of $4,039.00.

46.     All medical treatment provided to Jennings by Champlost was performed in conformity with the requirements of MVFRL.

47.     For a period from on or about July 17, 2002 through September 9, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Jin Hyu Kim ("Kim"), a patient insured by State Farm, in the amount of $4,357.47.

48.     All medical treatment provided to Kim by Champlost was performed in conformity with the requirements of MVFRL.

49.     For a period from on or about June 25, 2002 through August 1, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Channavy Kong ("Kong"), a patient insured by State Farm, in the amount of $1,223.00.

50.     All medical treatment provided to Kong by Champlost was performed in conformity with the requirements of MVFRL.

51.     For a period from on or about February 13, 2002 through June 20, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Ly Lav ("Lav"), a patient insured by State Farm, in the amount of $2,421.09.

52.     All medical treatment provided to Lav by Champlost was performed in conformity with the requirements of MVFRL.

53.     For a period from on or about April 18, 2002 through September 9, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Charles Leonard ("Leonard"), a patient insured by State Farm, in the amount of $6,407.39.

54.     All medical treatment provided to Leonard by Champlost was performed in conformity with the requirements of MVFRL.

55.     For a period from on or about September 17, 1999 through June 13, 2000, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to James McClam ("McClam"), a patient insured by State Farm, in the amount of $6,512.00.

56.     All medical treatment provided to McClam by Champlost was performed in conformity with the requirements of MVFRL.

57.     For a period from on or about June 17, 2002 through September 3, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Samuel McCullough ("McCullough"), a patient insured by State Farm, in the amount of $5,044.47.

58.     All medical treatment provided to McCullough by Champlost was performed in conformity with the requirements of MVFRL.

59.     For a period from on or about March 6, 2002 through September 11, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Sabrina Marshall ("Marshall"), a patient insured by State Farm, in the amount of $7,369.93.

60.     All medical treatment provided to Marshall by Champlost was performed in conformity with the requirements of MVFRL.

61.     For a period from on or about December 14, 2001 through March 19, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to David Nelson ("Nelson"), a patient insured by State Farm, in the amount of $2,175.05.

62.     All medical treatment provided to Nelson by Champlost was performed in conformity with the requirements of MVFRL.

63.     For a period from on or about September 17, 2001 through December 18, 2001, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Deuk Keun No ("No"), a patient insured by State Farm, in the amount of $1,578.00.

64.     All medical treatment provided to No by Champlost was performed in conformity with the requirements of MVFRL.

65.     For a period from on or about May 21, 2002 through August 29, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Lonnie Roberts, Jr. ("Roberts"), a patient insured by State Farm, in the amount of $1,593.00.

66.     All medical treatment provided to Roberts by Champlost was performed in conformity with the requirements of MVFRL.

67.     For a period from on or about April 3, 2002 through August 7, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Jennifer Tarpley ("Tarpley"), a patient insured by State Farm, in the amount of $2,533.47.

68.     All medical treatment provided to Tarpley by Champlost was performed in conformity with the requirements of MVFRL.

69.     For a period from on or about December 24, 2001 through June 11, 2002, inclusive, Champlost submitted health insurance claim forms for medical treatment and care provided to Hakim Uqdah ("Uqdah"), a patient insured by State Farm, in the amount of $2,738.83.

70.     All medical treatment provided to Uqdah by Champlost was performed in conformity with the requirements of MVFRL.

71.     Without legal justification, State Farm has refused payment of the first-party benefit insurance claims submitted for payment by Champlost for reasonable and necessary medical treatment rendered to the above-referenced insured patients.

### COUNT I

### Overdue Benefits Under §1716

72.     Plaintiff incorporates the allegations of paragraph 1 through 71 as though set forth in full.

73.     Section 1716 of the MVFRL entitled <u>Payment of Benefits</u> provides:

Benefits are overdue if not paid within thirty (30) days after the insurer received reasonable proof of the amount of the benefits.  If reasonable proof is not supplied as to all benefits, the portions supported by reasonable proof is overdue if not paid within thirty (30) days after the proof is received by the insurer.  Overdue benefits shall bear interest at a rate of twelve percent (12%) per annum from the date the benefits become due.  In the event the insurer is found to have acted in an unreasonable matter in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.  75 Pa.C.S.A. §1716.

74.     Despite the specific provisions of §1716, State Farm has refused to pay the benefits due on behalf of its insureds within thirty (30) days after receipt of proof of the amount due.

75.     The amounts detailed in Exhibits A through H and paragraphs 27 through 70 constitute overdue benefits in the amount of $132,947.33 within the meaning of the express provisions of the MVFRL.  75 Pa.C.S.A. §1716.

76.     Under the provisions of 75 Pa.C.S.A. §1797(b)(3) and because State Farm failed to invoke a PRO Review, State Farm acted in an unreasonable matter by refusing to pay the bills as a matter of law.  <u>Harcourt v. General Accident Insurance Company</u>, 419 Pa.Super. 155, 169, 615 A.2d 71, 79 (1992).

77.     State Farm's refusal to pay the overdue benefits constitutes an express violation of §1716, which entitles plaintiff to receive the overdue benefits and interest at a rate of twelve percent (12%) per annum to be computed from September 17, 1999 through the present.

WHEREFORE, plaintiff Champlost Family Medical Practice, P.C. respectfully requests this Honorable Court to enter judgment against State Farm in the amount of $132,947.33 with interest

at a rate of twelve percent (12%) per annum from thirty (30) days after submission of each insurance claim form through the present, plus cost of suit.

## COUNT II

### Attorney Fees Under §1716 and §1798

78.     Plaintiff incorporates the allegations of paragraphs 1 through 77 as though set forth in full.

79.     Under the provisions of 75 Pa.C.S.A. §1797(b)(3), a carrier must pay a provider within thirty (30) days after a bill is submitted when no PRO review has been commenced. Harcourt, supra, 419 Pa.Super. at 169, 615 A.2d at 79 (where the court held "...§1797(b)(3) clearly requires an insurance carrier to pay the provider any disputed amounts for treatment which has not been challenged until thirty-one (31) or more days after the carrier received the bill for treatment.").

80.     By failing to request a PRO Review in accordance with the requirements of §1797(b)(3), State Farm's failure to pay benefits when due is unreasonable and/or without a reasonable foundation.  See, Danton v. State Farm Mutual Automobile Insurance Company, 769 F.Supp. 174, 177 (E.D.Pa. 1991) (where the court found that §1797 sets out the exclusive system for the insurance company to challenge the reasonableness and necessity of treatment).

81.     Because State Farm acted in a unreasonable manner by refusing to pay the benefits when due, plaintiff is entitled to receive a reasonable attorney's fee based upon actual time expended under the express provisions of §1716.

82.     In addition, and because State Farm acted without a reasonable foundation, plaintiff is entitled to an award of attorney fees under 75 Pa.C.S.A. §1798(b), which provides in pertinent part:

-12-

> In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits [due]...when due, the insurer shall pay in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

WHEREFORE, plaintiff Champlost Family Medical Practice, P.C. respectfully requests this Honorable Court to enter an Order directing State Farm to pay a reasonable attorney's fee based upon the actual time expended.

## COUNT III

### Treble Damages Under §1797

83.    Plaintiff incorporates the allegations of paragraphs 1 through 82 as though set forth in full.

84.    Pursuant to the insurance claim forms submitted to the carrier, State Farm was notified of its obligation to pay plaintiff.

85.    Despite submission of the claims, State Farm ignored its obligations to pay benefits when due under the MVFRL.

86.    State Farm's conduct must be considered to be wanton and subjects State Farm to payment of treble damages pursuant to 75 Pa.C.S.A. §1797(b)(4) which provides in pertinent part:

> A provider of medical treatment or rehabilitative services...may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services...the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the insured party.

WHEREFORE, plaintiff Champlost Family Medical Practice, P.C. respectfully requests this Honorable Court to enter judgment against State Farm in the amount of $398,841.99 for treble damages.

-13-

## COUNT IV

### Bad Faith

87.     Plaintiff incorporates the allegations of paragraphs 1 through 86 as though set forth in full.

88.     State Farm has not invoked the PRO review process to challenge any of the bills submitted by Champlost.

89.     State Farm has acted in an unreasonable, wanton manner by refusing without legal justification to process the first-party claims submitted by Champlost, because it has acted outside the specific provision of the MVFRL.

90.     42 Pa.C.S.A. §8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (a)     Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus three (3%) percent.
>
> (b)     Award punitive damages against the insurer.
>
> (c)     Assess court costs and attorney fees against the insurer.

91.     Although Champlost technically is not the "insured," under Pennsylvania law, "an insured's claim against his or her insurer, in the nature of breach of contract, breach of fiduciary duty, and bad faith, as well as claims under §8371 of the judicial code for punitive damages, counsel fees and interest, are **assignable**." Brown v. Candelora, 708 A.2d 104, 112 (Pa.Super. 1998).

92.    Scott assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "I" is a true and correct copy of Scott's notarized Assignment of Rights.

93.    Hill assigned her contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "J" is a true and correct copy of Hill's notarized Assignment of Rights.

94.    Whitmore assigned her contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "K" is a true and correct copy of Whitmore's notarized Assignment of Rights.

95.    Trinh assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "L" is a true and correct copy of Trinh's notarized Assignment of Rights.

96.    Glenn assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "M" is a true and correct copy of Glenn's notarized Assignment of Rights.

97.    Tyler assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "N" is a true and correct copy of Tyler's notarized Assignment of Rights.

98.    Kelly assigned her contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "O" is a true and correct copy of Kelly's notarized Assignment of Rights.

99.    Rucker assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "P" is a true and correct copy of Rucker's notarized Assignment of Rights.

100.    Adams assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "Q" is a true and correct copy of Adams' notarized Assignment of Rights.

101.    Ashby assigned her contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "R" is a true and correct copy of Asby's notarized Assignment of Rights.

102.    Chim assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "S" is a true and correct copy of Chim's notarized Assignment of Rights.

103.    Choing assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "T" is a true and correct copy of Choing's notarized Assignment of Rights.

104.    Gass assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "U" is a true and correct copy of Gass' notarized Assignment of Rights.

105.    Griffin assigned her contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "V" is a true and correct copy of Griffin's notarized Assignment of Rights.

106.    Hankins assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "W" is a true and correct copy of Hankins' notarized Assignment of Rights.

107.    Hawkins assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "X" is a true and correct copy of Hawkins' notarized Assignment of Rights.

108.    Hendricks assigned her contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "Y" is a true and correct copy of Hendricks' notarized Assignment of Rights.

109.    Jennings assigned her contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "Z" is a true and correct copy of Jennings' notarized Assignment of Rights.

110.    Kim assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "A1" is a true and correct copy of Kim's notarized Assignment of Rights.

111.    Kong assigned her contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "B1" is a true and correct copy of Kong's notarized Assignment of Rights.

112.    Lav assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "C1" is a true and correct copy of Lav's notarized Assignment of Rights.

113.    Leonard assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "D1" is a true and correct copy of Leonard's notarized Assignment of Rights.

114.    McClam assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "E1" is a true and correct copy of McClam's notarized Assignment of Rights.

115.    McCullough assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "F1" is a true and correct copy of McCullough's notarized Assignment of Rights.

116.    Marshall assigned her contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "G1" is a true and correct copy of Marshall's notarized Assignment of Rights.

117.    Nelson assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "H1" is a true and correct copy of Nelson's notarized Assignment of Rights.

118.    No assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "I1" is a true and correct copy of No's notarized Assignment of Rights.

119.    Roberts assigned his contractual rights for first party benefits to Champlost. Attached hereto and marked as Exhibit "J1" is a true and correct copy of Roberts' notarized Assignment of Rights.

120.   Tarpley assigned her contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "K1" is a true and correct copy of Tarpley's notarized Assignment of Rights.

121.   Uqdah assigned his contractual rights for first party benefits to Champlost.  Attached hereto and marked as Exhibit "L1" is a true and correct copy of Uqdah's notarized Assignment of Rights.

122.   Accordingly, Champlost has standing to pursue a bad faith claim against State Farm.

123.   42 Pa.C.S.A. §8371 establishes a separate and independent cause of action for bad faith claims against insurance companies.  See, Serubo v. Home Insurance Company, 1995 West Law 461274 at *2 (E.D,.Pa,. August 3, 1995).  See also, Schwartz v. State Farm Insurance Company, 1996 West Law 189839 *4 (E.D.Pa. 1996).

124.   State Farm's frivolous and unfounded refusal to pay benefits when due is a breach of a known duty, imports a dishonest purpose and constitutes bad faith.  See, Romano v. Nationwide Mutual Fire Insurance Company, 646 A.2d 1228, 1231 (Pa.Super. 1984).

125.   Based upon State Farm's bad faith conduct, plaintiff is entitled to recover all of the damages allowed and authorized by 42 Pa.C.S.A. §8371.

WHEREFORE, plaintiff Champlost Family Medical Practice, P.C. respectfully request this Honorable Court to enter an Order against State Farm awarding punitive damages, interest on the amount of each claim from the date of submission in the amount of the prime rate of interest plus

three (3%) percent, assessing court costs and attorney's fees and granting such other and further relief

as this Court deems necessary, just and appropriate.


DOLCHIN, SLOTKIN & TODD, P.C.


Date: _____        By: _____
                               JOEL W. TODD, ESQUIRE
                               JULIA CARPINO, ESQUIRE
                               **Attorneys for Plaintiff**
                               One Commerce Square - 24th Flr.
                               2005 Market Street
                               Philadelphia, PA 19103

## CERTIFICATION OF SERVICE

I, JOEL W. TODD, ESQUIRE, counsel for plaintiff, do hereby certify that I have caused the

attached **SECOND AMENDED COMPLAINT** to be served upon the following person(s) on the

date listed below, via United States First Class Mail, to the following address:


        Brian A. Wall, Jr., Esquire
        Britt, Hankins, Schaible & Moughan
        Suite 515, Two Penn Center Plaza
        1500 John F. Kennedy Blvd.
        Philadelphia, PA 19102-1888


_____
JOEL W. TODD, ESQUIRE
JULIA CARPINO, ESQUIRE
Attorney for Plaintiff


DATE:_____

-21-